CLERK U.S. DISTRICT COURT
NORTHERN DISE OF TX
FILED

2014 OCT 27  PM 4: 09

DEPUTY CLERK____BB

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

Dallas Division

| | |
|---|---|
| JENNIFER K. ABBOTT-POPE<br>Plaintiff | ) <br> ) <br> ) <br> ) <br> ) |
| | **3 - 14 C V - 3 8 3 8 M** |
| VS. | )    Civil Action No._____ |
| | ) |
| TEXAS RECOVERY BUREAU, INC.<br>HSBC FINANCIAL CORPORATION;<br>PRA RECEIVABLES MANAGEMENT,<br>LLC, as agent of PORTFOLIO<br>RECOVERY ASSOCIATES, LLC;<br>PORTFOLIO RECOVERY<br>ASSOCIATES, LLC;<br>SANTANDER CONSUMER USA<br>and<br>BECK & MASTEN PONTIAC-GMC. INC. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    "JURY TRIAL DEMANDED"<br> ) |
| Defendants | ) |

## COMPLAINT

NOW COMES the Plaintiff, Jennifer Abbott-Pope, Pro Se and sue the Defendants, Beck & Masten Pontiac- GMC. Inc.; HSBC Financial Corporation; PRA Receivables Management, LLC as agent of Portfolio Recovery Associates, LLC; Portfolio Recovery Associates, LLC; Santander Consumer USA and Texas Recovery Bureau, Inc. for the cause as follows:

### I.
### STATEMENT OF JURISDICTION AND VENUE

#### Subject Matter

1) The subject matter action in this case arises under a federal statute, 18 U.S.C. §1341, Mail Fraud.

2)  Defendants HSBC Financial Corporation and Santander Consumer USA mailed letters via USPS to Plaintiff requesting money on bogus assignment and collected funds, totaling over $11,000, between July 2008-August 2013.

3)  A true copy of "Payment Summary" reflecting funds paid by Plaintiff was mailed via USPS to Plaintiff from PRA Receivables Management, LLC as agent of Portfolio Recovery Associates, LLC/Portfolio Recovery Associates, LLC and included in defendant's Correspondence Packet attached as Exhibit A and incorporated herein by reference "Payment Summary".

4)  Defendant Texas Recovery Bureau, Inc. mailed a letter to Plaintiff via USPS for the purpose of obtaining money for "storage fees". A true copy is attached as Exhibit B and incorporated herein by reference "TRB Letter".

5)  Defendants PRA Receivables Management, LLC as agent of Portfolio Recovery Associates, LLC/Portfolio Recovery Associates, LLC mailed a letter to Plaintiff via USPS admitting to taking Plaintiff's car from her residence in an act of conversion and trespass to chattel with the intent to sell Plaintiff's car. A true copy of "Intent to Sale Letter" is attached as Exhibit C and incorporated herein by reference "Intent to Sale Letter".

6)  Defendants PRA Receivables Management, LLC as agent of Portfolio Recovery Associates, LLC/Portfolio Recovery Associates, LLC mailed a letter to Plaintiff via USPS indicating a debt owed by Plaintiff to the aforementioned defendants in the amount of $15,106.56. A true copy of letter is attached as Exhibit D and incorporated herein by reference "Transfer of Servicing".

7)  Jurisdiction in this case is based on the existence of a specific grant jurisdiction under 28 U.S.C. §1339, Postal, as shown more fully in this complaint.

8)  Pendent jurisdiction is proper for a joinder of claims in this case. The action which arises under 18 U.S.C. §1341 and the nonfederal claims (Fraud, Fraudulent Inducement, Interference With Existing Contract, Negligent Misrepresentation, Fraud by Nondisclosure, Abuse of Process, Conversion, Trespass to Chattel, Invasion of Privacy and Breach of Deceptive Trade Practice Act) of this case "derive from a common nucleus of operative fact". *United Mine Workers of America v. Gibbs*, 383 U.S. 715,725(1966).

## In Personam Personal Jurisdiction

1)  This Honorable Court has specific in personam jurisdiction over nonresident defendant PRA Receivables Management, LLC, as agent of Portfolio Recovery Associates, LLC ("PRA") pursuant to Tex. Civ. Prac. & Rem. Code Ann. §17.042. PRA conducts business as a debt collector in Texas and contracted services from Texas Recover Bureau, Inc. ("TRB") for the purpose of repossessing the Plaintiff's 2006 Pontiac Grand Prix VIN# 2G2WP552461213001. By conducting business in Texas for an economic gain as a debt collector, PRA purposefully avails itself to the privilege of "conducting activities" within the forum state; thus, making PRA amenable to service of process

under Texas long-arm statute. A single act of business satisfies the minimum contacts requirement for due process and invokes the benefit and protection of Texas laws and does not offend 'traditional notions of fair play and substantial justice'. *See International Shoe Co., v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed 2d 1283 (1958); *see also Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir. 1990).

2) This Honorable Court has specific in personam jurisdiction over nonresident defendant HSBC Financial Corporation ("HSBC") pursuant to Tex. Civ. Prac. & Rem. Code Ann. §17.042. HSBC conducts business in Texas as a financial services company. By conducting business in Texas for an economic gain as a financial services company, HSBC purposefully avails itself to the privilege of "conducting activities" within the forum state; thus, making HSBC amenable to service of process under Texas long-arm statute. A single act of business satisfies the minimum contacts requirement for due process and invokes the benefit and protection of Texas laws and does not offend 'traditional notions of fair play and substantial justice'. *See International Shoe Co., v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed 2d 1283 (1958); *see also Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir. 1990).

3) This Honorable Court has specific in personam jurisdiction over nonresident defendant Santander Consumer USA ("SCU") pursuant to Tex. Civ. Prac. & Rem. Code Ann. §17.042. SCU conducts business in Texas as an automotive finance company for dealers and consumers. By conducting business in Texas for an economic gain as an automotive finance company, SCU purposefully avails itself to the privilege of "conducting activities" within the forum state; thus, making SCU amenable to service of process under Texas long-arm statute. A single act of business satisfies the minimum contacts requirement for due process and invokes the benefit and protection of Texas laws and does not offend 'traditional notions of fair play and substantial justice'. *See International Shoe Co., v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed 2d 1283 (1958); *see also Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir. 1990).

4) This Honorable Court has specific in personam jurisdiction over nonresident defendant Portfolio Recovery Associates, LLC ("Portfolio") pursuant to Tex. Civ. Prac. & Rem. Code Ann. §17.042. Portfolio conducts business as a debt collector in Texas and is the principal for PRA. The law of agency allows one person to employ another to do his or her work. The principal may authorize the agent to perform a variety of tasks and regardless of the amount or scope of the task, of the authority given to the agent; the agent represents the principal and is subject to the principal's control. More important, the principal is liable for the consequences of acts that the agent has been directed to perform. If the principal intentionally confers express and implied powers to the agent to act for him or her, that agent possesses actual authority.

5) When the agent exercises actual authority, it is as if the principal is acting, and the principal is bound by the agent's acts and is liable for them. "Actual authority denotes that authority which the principal intentionally confers upon the agent, or intentionally allows the agent to believe he has, or by want of ordinary care allows the agent to believe himself to possess." *Disney Enters., Inc. v. Espirit Fin.*, 981 S.W.2d (Tex. App.-San Antonio 1998, pet. dism'd w.o.j.).

6) By conducting business in Texas for an economic gain as a debt collector, Portfolio purposefully avails itself to the privilege of "conducting activities" within the forum state; thus, making Portfolio amenable to service of process under Texas long-arm statute. A single act of business satisfies the minimum contacts requirement for due process and invokes the benefit and protection of Texas laws and does not offend 'traditional notions of fair play and substantial justice'. *See International Shoe Co., v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed 2d 1283 (1958); *see also Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

7) This Honorable Court has specific in personam jurisdiction over nonresident defendant Beck & Masten Pontiac-GMC. Inc. ("Beck") pursuant to Tex. Civ. Prac. & Rem. Code Ann. §17.042. Beck conducts business as an automobile dealership which also offers car loans and automobile financing. By conducting business in Texas for an economic gain, Beck purposefully avails itself to the privilege of "conducting activities" within the forum state; thus, making Beck amenable to service of process under Texas long-arm statute. A single act of business satisfies the minimum contacts requirement for due process and invokes the benefit and protection of Texas laws and does not offend 'traditional notions of fair play and substantial justice'. *See International Shoe Co., v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed 2d 1283 (1958); *see also Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

8) This Honorable Court has general in personam jurisdiction over Texas Recovery Bureau ("TRB") as TRB is a resident defendant in Texas and conducts business in Texas.

### In Rem Personal Jurisdiction

1) This Honorable court has in rem jurisdiction to adjudicate and bind this joinder of defendants with this complaint. The personal property in this complaint, a 2006 Pontiac Grand Prix VIN# 2G2WP552461213001("car"), is registered in Denton County, Texas to Jennifer Abbott-Pope ("Plaintiff") and was so at the time of conversion and trespass to chattel from TRB, PRA and Portfolio.

### Venue

1) Venue is proper under 28 U.S.C. §1391(b)(2). Defendants PRA and Portfolio mailed a letter via USPS to Plaintiff indicating a debt owed by Plaintiff to aforementioned defendants in the amount of $15,106.56.

2) PRA and Portfolio mailed a letter via USPS to Plaintiff indicating they have Plaintiff's car because Plaintiff "broke promises in our agreement". PRA and Portfolio contracted TRB to take Plaintiff's car from her residence in an act of conversion and trespass to chattel on September 3, 2014.

3) Venue is proper under 28 U.S.C. §1391(c)(2). All defendants are entities with the capacity to sue and be sued in their entity's name under applicable law, whether or not incorporated, in this judicial district and are subject to in personam jurisdiction with respect to the civil action in this complaint and this court.

## II.
## AFFIRMATIVE DEFENSE TO LIMITATIONS
### Discovery Rule

1) The Plaintiff entreats this Honorable Court to grant deferment of accrual regarding Plaintiff's Alternative Claims against defendants: Beck & Masten Pontiac-GMC. Inc.; HSBC Financial Corporation; PRA Receivables Management, LLC as agent of Portfolio Recovery Associates, LLC; Portfolio Recovery Associates, LLC; and Santander Consumer USA under the Discovery Rule as Plaintiff's injury and harm was inherently undiscoverable during the statute of limitation and at the present is objectively verifiable.

2) "The discovery rule is not dependent upon Plaintiff knowing or becoming aware of the cause of injury, the identity of the defendants, the full extent of the injury, or the chances of avoiding the injury and/or the chances of avoiding the injury and/or the extent of the injury." *Exxon Corp. v. Emerald Oil & Gas. Co.,* 348 S.W.3d 194, 207 (Tex. 2011).

3) "The discovery rule defers the accrual of plaintiff's cause of action until such time as the plaintiff knows or should know, through the exercise of due diligence, of facts giving rise to the claim." *Barker v. Eckman,* 213 S.W.3d 306, 311-312.

### Continuing-Tort Doctrine

4) The Plaintiff entreats this Honorable Court to grant deferment of accrual regarding Plaintiff's Alternative Claims against defendants: Beck & Masten Pontiac-GMC. Inc.; HSBC Financial Corporation; PRA Receivables Management, LLC as agent of Portfolio Recovery Associates, LLC; Portfolio Recovery Associates, LLC and Santander Consumer USA under the continuing-tort doctrine as Plaintiff's injury and harm was inherently undiscoverable during the statute of limitation and at the present is objectively verifiable.

5) "A continuing tort is a repeated injury cause by repetitive wrongful acts; it is NOT an ongoing, continuous injury that results from one wrongful act." *Krohn v. Marcus Cable Assocs.*, 201 S.W.3d 876, 880 (Tex. App.-Waco 2006, Pet. Denied). "When the continuing-tort doctrine applies, the statute of limitations does not accrue until the tortious conduct ceases." *Id.*

### Fraudulent Concealment Doctrine

6) The Plaintiff entreats this Honorable Court to grant deferment of accrual regarding Plaintiff's Alternative Claims against defendants: Beck; HSBC; PRA; Portfolio; and SCU under the fraudulent concealment doctrine as Plaintiff's injury and harm was inherently undiscoverable during the statute of limitation and at the present is objectively verifiable.

7) "This doctrine estops a defendant from relying on the defense of limitations if the defendant was under a duty to make a disclosure but fraudulently concealed the existence of a cause of action from the party to whom it belongs." *Ponder v. Brice & Mankoff*, 889 S.W.2d 637, 645 (Tex. App.-Houston[14th Dist.] 1994, writ denied.)

8) "The plaintiff must establish the following elements in order for fraudulent concealment to toll the statute of limitation: (1) the defendant possessed actual knowledge of the wrong; (2) the defendant concealed the wrong by remaining silent when there was a duty to speak and/or making a misrepresentation that concealed the wrong; (3) the defendant had a fixed purpose to conceal the wrong; and (4) the plaintiff relied on the defendant's misrepresentation or silence." *See Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001).

**(Against defendant Beck)**
9) (1) Beck listed HSBC as "assignee" on the original Motor Vehicle Retail Installment Sales Contract Simple Finance Charge Truth In Lending between Beck and Plaintiff. A true copy the Contract is attached as Exhibit E and incorporated herein by reference "Contract".

10) (2) Beck concealed the fact from Plaintiff that HSBC, as an unassigned assignee, did not possess a legal right to collect payments from the Plaintiff without a valid legal assignment indicating the intention of the parties involved.

11) HSBC was not indicated on the "Contract" as a third party intended beneficiary and Beck chose to remain silent and not inform the Plaintiff of such facts. Texas law presumes that parties "contracted for themselves unless it 'clearly appears' that they intended a third party to benefit from the contract." *MCI Telecom. Corp. v. Texas Util. Elec. Co.*, 995 S.W.2d 647-651 (Tex. 1999). "The contract must 'clearly and fully spell out' third party beneficiary status." *Id.*

12) "Third party beneficiary status cannot be created by implication" *Id.*; (3) Beck's fixed purpose was to conceal the fraudulent act because Plaintiff would have asked questions regarding why there was a need for another contract; (4) Plaintiff relied on Beck's silence when Beck had a legal duty to properly establish HSBC as a third party intended beneficiary "assignee" if the true intent was for HSBC's gain;

13) (5)as a result of Beck's fraudulent concealment of its legal duty in establishing an assignment, the Plaintiff suffered damages of mental anguish, psychological torture, economic damages and inconvenience.

**(Against defendant HSBC)**

14) (1)HSBC knew there was not a legal assignment granted to legally establish assignor, assignee and obligator nor a novation between original parties and that there was no legal contractual agreement between Plaintiff and HSBC as necessary to establish a binding contract under Tex. Bus. & Comm. Code Ann.§26.01 (a)(1)(2), (b)(2), (6) for the purpose of becoming a collateral lienholder;

15) (2)HSBC misrepresented itself as a third party intended beneficiary and in such requested payments via USPS mail and accepted said payments from Plaintiff via USPS without establishing: 1) its specific type of assignment and 2) an Assignment contract or novation with contracting parties. HSBC's ultra vives actions later sold Plaintiff's debt to SCU as an "assignment".

16) HSBC purposely remained silent when it owed the Plaintiff a legal duty to disclose facts that an assignment had not been legally established between original parties of the "Contract" and that it was not an third party intended beneficiary as described under the Third Party Beneficiary Doctrine.

17) "The intent to confer a direct benefit upon a third party 'must be clearly and fully spelled out or enforcement by the third party must be denied.'" *MCI Telecom. Corp.* 995 S.W.2d at 651. "Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract." *Id.* At 652.

18) "A third party may only enforce a contract when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit." *Id.* At 651; *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002).

19) "To qualify as one for whose benefit a contract was made, the third party must benefit more than incidentally, he must be either a donee or creditor beneficiary." *MCI Telecom. Corp.* 995 S.W.2d at 651. If HSBC was to assume the role as creditor beneficiary, there must be new consideration and a new contract between parties and there was none;

20) (3)HSBC's fixed purpose was to conceal the fact of a non-existing assignment; (4)Plaintiff relied on HSBC's misrepresentation as Plaintiff was not aware that neither a third party intended beneficiary assignment contract nor a novation was necessary for HSBC's intended benefit; (5)as a result of HSBC's fraudulent concealment of its legal duty in establishing a legal right as a third party intended beneficiary or novation, the Plaintiff suffered damages of mental anguish, psychological torture, inconvenience and economic loss.

21) There must be contract to contract due diligence between parties especial where there is securitization. Neither at law nor in equity could the burden of a contract be shifted off the shoulders of Beck on to those of HSBC, SCU, PRA, or Portfolio without the consent of the Plaintiff and the principle that the burden of a contract cannot be transferred so as to discharge the original contractor without the consent of the other party means that, as a general rule, the assignee of the benefit of a contract involving mutual rights and obligations does not acquire the assignor's contractual obligations.

22) At law, assignment is the term used to describe the transfer of a right. Conceptually therefore, an assignment of obligations, as the burden of a contract, may only be transferred with the consent of all the parties, and such a transfer, is a matter of law and classified as a novation.

<u>Statute of Limitation</u>

Contract 4yrs Tex. Civ. Prac. & Rem. Code §16.004(a)(3)
Fraud 4yrs Tex. Civ. Prac. & Rem. Code §16.004(a)(4)
Personal Injury 2yrs Tex. Civ. Prac. & Rem. Code §16.003(a)
Accounts and Contracts Tex. Civ. Prac. & Rem. Code §16.004(c)

III.
## PARTIES AND SERVICE

1) The Plaintiff request this Honorable Court to issue summons to each defendant listed under this section and deliver summons to each defendant's Registered Agent as indicated. Service shall be administered by a method applicable under the direction of the District Clerk.

2) Plaintiff Jennifer Abbott-Pope brings this cause of action Pro Se. Plaintiff resides in Denton County, Texas at 2206 Carrollton, Texas 75007.

3) Defendant PRA Receivables Management, LLC as agent of Portfolio Recovery Associates, LLC ("PRA") is a nonresident defendant which conducts business in Texas as a debt collector under Texas Taxpayer # is unknown and may be served with citation/summons at Registered Agents Address: CORPORATION SERVICE COMPANY D/B/A CSC-LAWYERS INC 211 E. 7TH STREET SUITE 620 AUSTIN, TEXAS 78701

4) Defendant Portfolio Recovery Associates, LLC ("Portfolio") is a nonresident defendant which conducts business in Texas as a debt collector under Texas Taxpayer # 32047838118 and may be served with citation/summons at Registered Agents Address: CORPORATION SERVICE COMPANY D/B/A CSC-LAWYERS INC 211 E. 7TH STREET SUITE 620 AUSTIN, TX 78701

5) Defendant HBSC Financial Corporation ("HSBC") is a nonresident defendant which conducts business in Texas as a financial services company under Texas Taxpayer # 32038323245 and may be served with citation/summons at Registered Agents address: CT CORPORATION SYSTEM 1999 BRYAN ST. STE. 900 DALLAS, TEXAS 75201

6) Defendant Santander Consumer USA ("SCU") is a nonresident defendant which conducts business in Texas as an automotive finance company for dealers and consumers under Texas Taxpayer # 13631499939 and may be served with citation/summons at Registered Agents address: CT CORPORATION SYSTEM 1999 BRYAN ST. STE. 900 DALLAS, TEXAS 75201

7) Defendant Texas Recovery Bureau ("TRB") is a resident defendant which conducts business in Texas under Texas Taxpayer# 32053360726 and may be served with citation/summons at Registered Agents address: HERB K. MINER JR 3541 DENTON HWY. HALTOM CITY, TEXAS 76117

8) Defendant Beck & Masten Pontiac-GMC. Inc. ("Beck") is a nonresident defendant which conducts business in Texas as an automobile dealership which also offers car loans and automobile financing under Texas Taxpayer# 17600755783 and may be served with

citation/summons at Registered Agents address: JOHN A. BECK 11300-FM 1960 WEST HOUSTON, TEXAS 77065

## IV.
## STATEMENT OF FACTS

1) On June 04, 2008, Plaintiff and Beck entered into a "Contract" for a 2006 Pontiac Grand Prix, used car, VIN# 2G2WP552461213001("car") for the Plaintiff's personal, family or household use.

2) The "Contract" listed HSBC as an "assignee" with no inference as a third party intended beneficiary.

3) Plaintiff remitted payments between July 2008 through March 2010 to HSBC; until HSBC sold the Plaintiff's debt to SCU through an acquisition asset assignment sale.

4) In April 2010, Plaintiff began remitting payments directly to SCU as a result of the asset acquisition sale between HSBC and SCU. Plaintiff continued to make payments directly to SCU until May 2011.

5) Plaintiff filed Chapter 13 Bankruptcy ("Chap 13") in September 2011 with the United States Bankruptcy Court Southern District of Texas.

6) SCU was indicated in Plaintiff's Chap 13 as a "secured creditor" to be paid under the Chap 13 Plan and received payment through the Trustee. A true copy is attached as Exhibit F and incorporated herein by reference "Chap 13 Plan".

7) On August 27, 2013, SCU filed a Transfer of Claim Other Than for Security with the United States Bankruptcy Court Southern District of Texas naming PRA/PF as the transferee. A true copy is attached as Exhibit G and incorporated herein by reference "Transfer of Claim".

8) On March 13, 2014, Plaintiff's Chap 13 case was dismissed.

9) Plaintiff received a letter via USPS dated June 12, 2014 from PRA and Portfolio "transfer of servicing" indicating that Portfolio Recovery Associates, LLC was: 1) a creditor; 2) current owner of Plaintiff's Debt; and 3) a debt collector. The letter indicated an amount owed of $15,106.56. A true copy is attached as Exhibit D and incorporated herein by reference "Transfer of Servicing".

10) Plaintiff received a "Notice of Intent to Accelerate" letter via USPS dated July 24, 2014 from PRA and Portfolio indicating they were attempting to collect a debt in an amount of $2.005.92. The letter indicated that Plaintiff was in default under an agreement. A true copy is attached as Exhibit H and incorporated herein by reference "Notice of Acceleration".

11) On September 3, 2014, the Plaintiff's car was parked in her residential driveway under the carport at the rear of the house in Carrollton, Texas and at some point between 1:40am CST and 1:50am CST, defendant TRB took the Plaintiff's car from her residential drive way under the instructions of defendants PRA and Portfolio.

12) At approximately, 1:52am CST on September 3, 2014, the Plaintiff discovered that her car was missing from her driveway. At approximately 1:54am CST on September 3, 2014, the Plaintiff called the Carrollton Police to report her car stolen at which time she notified the police that there were black tire marks stretching the length of her drive with a starting point from where the car was parked. A true copy is attached as Exhibit I and incorporated herein by reference "Picture".

13) The Carrollton Police, after obtaining the residential address and make/model of the Plaintiff's car, informed the Plaintiff that the defendant, TRB, called in a "repossession" at 1:45am September 3, 2014 regarding Plaintiff's car.

14) Plaintiff received a "Notice of Intent to Sale Property" letter via USPS dated September 9, 2014 from PRA and Portfolio indicating "We have your vehicle because you broke promises in our Agreement" and "We will sell the vehicle at a private sale sometime after September 30, 2014." See Exhibits C.

15) On September 10, 2014, Plaintiff received a letter via USPS from TRB indicating Plaintiff had personal property (paperwork) in her car and that Plaintiff could recover such personal property "with prior written authorization from the lienholder." See Exhibit B.

16) On September 20, 2014, Plaintiff mailed a validation letter to PRA and Portfolio requesting the validity of the alleged debt and a demand for the return of Plaintiff's car. A true copy of the letter is attached as Exhibit J and incorporated herein by reference "Demand for Return of Car".

17) On September 29, 2014, Plaintiff received the Return Receipt from PRA and Portfolio.

18) On October 2, 2014, Plaintiff received a reply correspondence packet from PRA and Portfolio containing the following documents: Response letter (Exhibit K), Plaintiff's Applicant Credit Statement (2 pgs) (Exhibit L), a copy of the Lienholders page on "Contract" indicating a

signature which is not on Plaintiff's "Contract" (Exhibit M), Plaintiff's Payment Summary (Exhibit A), Transfer of Servicing Letter-PRA and Portfolio copy (Exhibit P), Notice of Intent to Accelerate Letter-PRA and Portfolio copy (Exhibit Q), Transfer of Claim other Than For Security (Exhibit G), Bill of Sale and Assignment (Exhibit N), Limited Power of Attorney (Exhibit O). A true copy is attached as Exhibits listed respectively and incorporated herein by reference of lettering.

19) In Plaintiff's "Demand for Return of Car" letter to PRA and Portfolio, she requested a copy of the Certificate of Title which would show the legal lienholder of her car. PRA and Portfolio response stated "Please note as a matter of security, we do not send copies of collateral titles to our customers".  See Exhibit J and K.

V.

## CLAIM FOR RELIEF

### COUNT I

MAIL FRAUD- FRAUDS & SWINDLES

**(Against defendant HSBC, SCU, PRA, Portfolio and TRB)**

1) The Plaintiff incorporate by reference paragraphs 1-19 Statement of Facts of this complaint and exhibits as such sets forth here and further states the following:

2) "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S. Code §1341.

3) "There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud or to perform specified fraudulent acts and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme or specified fraudulent acts." *Schmuck v. United States*, 489 U.S. 705, 721n. 10 (1989); *see also Pereira V. United States*, 347 U.S. 1, 8

(1954)("The elements of the offense of mail fraud under...§1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc. for the purpose of executing the scheme.") Laura A. Eilers & Harvey B. Silikovitz, *Mail and Wire Fraud* 31 Am. Crim. L. Rev. 703, 704 (1994) cases cited).

4) "To constitute a violation of §1341..., it is not necessary to show that [defendants] actually mailed...anything themselves; it is sufficient if they caused it to be done." *Pereira v. United States*, 347 U.S. 1,8 (1954) (citing 18 U.S.C. (Supp. V)); *United States v. Kenofskey*, 243 U.S. 440, 443(1917)("cause" is used "in its well-known sense of bringing about..."); *accord United States v. Diggs*, 613 F.2d 988, 998(D.C. Cir.) ("One must 'cause' the mails to be used" to satisfy the element of the "use of the United States mails 'for the purpose of executing the scheme.'")(quoting *United States v. Maze*, 414 U.S. 88, 94(1944), cert. denied, 446 U.S. 982(1980).

5) "The requisite intent under the federal mail and wire fraud statutes may be inferred from the totality of the circumstances and need not be proven by direct evidence." *United States v. Alston*, 609 F.2d 531, 538(D.C. Cir. 1979), cert. denied, 445 U.S. 918 (1980). "This, intent can be inferred from statements and conduct." *United States v. Cusino*, 694 F.2d 185, 187(9th Cir. 1982)(citing *United States v. Beecroft*, 608 F.2d 753, 757(9th Cir. 1979), cert. denied,  461 U.S. 932(1983)).

6) "Fraudulent intent may be inferred from the modus operandi of the scheme." *United States v. Reid*, 533 F.2d 1255, 1964n. 34(D.C. Cir. 1976) ("The purpose of the scheme 'must injure, which doubles may be inferred when the scheme has such effect as a necessary result of carrying it out.")(quoting *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180-81(2d Cir. 1970.

7) The fraudulent aspect of the scheme to defraud is to be measured by nontechnical standards and is not restricted by any common-law definition of false pretenses. "The words 'to defraud' in the mail fraud statute have the 'common understanding of "wrong doing one in his property rights by dishonest methods or schemes" and "usually signify the deprivation of something of value by trick, chicane or overreaching."" *Carpenter v. United States*, 484 U.S. 27(1987)(quoting *McNally v. United States*, 483 U.S. 350, 358(1987)(quoting *Hammerschmidt v. Unites States*, 265 U.S. 182, 188(1924))).

8) Defendants mailed letters via USPS to the Plaintiff in a scheme to obtain money or property from Plaintiff through fraudulent representation of a third party intended beneficiary or party to Plaintiff's "Contract".

9) The letters mailed by HSBC, SCU, PRA and Portfolio indicated that Plaintiff had an "agreement" with them and indicated a bogus contract number stating an amount due

referencing Plaintiff's car. From these letters, Plaintiff made payments under the scheme to HSBC and SCU.

10) When Plaintiff did not send money to PRA and Portfolio, they committed an act of conversion and trespass to chattel by contracting TRB to take Plaintiff's car from her residence.

11) The letter mailed via USPS by TRB indicated TRB is holding the Plaintiff's personal property which will incur storage fees that will have to be paid prior to the release of her items.

## PRAYER FOR RELIEF

12)  WHEREFORE, Plaintiff demands the defendants to be summoned to answer herein and that upon a final hearing of the claims, judgment be entered for the Plaintiff against defendants HSBC, SCU, PRA, Portfolio and TRB individually for the following damages : 1)pre-judgment interest from the onset date of the injury June 4, 2008 through the date of judgment at the maximum rate allowed under Texas and Federal law; 2)post judgment interest at the legal rate; 3)exemplary damages- punitive; 4)non-economic damages for Plaintiff's mental anguish, psychological torture and inconvenience; 5)consequential damages; 6)economic damages of money given under a bogus agreement; 7)general damages; and 8)such other and further relief to which the Plaintiff may be entitled under law as determined by the jury.

VI.

## ALTERNATIVE CLAIMS FOR RELIEF

### COUNT II

### FRAUD

**(Against defendant HSBC, SCU)**

1)  The Plaintiff incorporate by reference paragraphs 1-19 Statement of Facts of this complaint and exhibits as such sets forth here and further states the following:

2)  "To establish fraud, a claimant must prove: (1) that a material representation was made; (2) that the representation was false; (3) that, when the speaker made the representation, he knew it was false or made it recklessly without knowledge of the truth as a positive assertion; (4) that the speaker made it with the intention that it should be acted upon by the claimant; (5) that the claimant acted in reliance upon it; and (6) that the claimant thereby suffered injury." *Johnson & Higgins of Tex., Inc. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524(Tex. 1998).

3) Under the Truth In Lending Act ("TILA"), an assignee is not a creditor. The credit-offering seller is the only creditor. An assignee is an entirely separate entity who assumes the creditor's rights under a Retail Installment Sales Contract ("RISC") if it chooses to accept assignment. If an assignee rejects assignment, the creditor continues to be liable under the RISC. *Official Staff Commentary on Reg. Z,* 12 C.F.R. §226.2(a)(17)(i). *Assignees.* "If an obligation is initially payable to one person, that person is the creditor even if the obligation by its terms is simultaneously assigned to another person."

4) HSBC violated federal statute 18 U.S.C. 2314 by fraudulently requesting and receiving money from the Plaintiff in excess of over $6000.

5) SCU violated federal statute 18 U.S.C. 2314 by fraudulently requesting and receiving money from the Plaintiff in excess of over $5000.

6) PRA and Portfolio violated federal statute 18 U.S.C. 2314 by fraudulently requesting money from the Plaintiff in excess of over $15,000 and taking Plaintiff's car with a value over $5000 at the time of conversion and trespass to chattel.

7) TRB violated federal statute 18 U.S.C. 2314 by participating in conversion and trespass to chattel regarding Plaintiff's car which had a value over $5000 at the time of conversion and trespass to chattel.

8) (1)HSBC was indicated on the "Contract" as an "assignee"; (2) there was no assignment contract between the parties as to indicate the true intent of a purported assignment nor was there a novation contract as to establish a substitution of a party; (3) HSBC represented itself as a third party intended beneficiary to request and accept payments from Plaintiff and represented itself as an original party to a contract by performing an act of novation, in such, by selling Plaintiff's debt to a third party, SCU;

9) (4) HSBC mailed letters to Plaintiff stating that payments should be made to them and gave the Plaintiff's "Contract" a bogus contract number in such that any payments made were attached to the bogus contract number. This contract number has been transferred to additional third parties of whom used such number to claim assignment; (5) when Plaintiff would contact Beck she was referred to contact HSBC with account inquiries and payments made were allocated to the bogus contract number;

10) (6) as a result of Plaintiff remitting payments to HSBC, HSBC unauthorized assignment inferred a right to enforce the "Contract" and sell Plaintiff's loan debt to SCU. SCU sold Plaintiff's loan debt to PRA and Portfolio and PRA and Portfolio, in an attempt to collect on the alleged debt, performed an act of conversion and trespass to chattel with Plaintiff's car which has not been returned to Plaintiff as of the date of this Complaint. The series of occurrences

has caused Plaintiff to thereby suffer mental anguish, psychological torture, inconvenience and economic loss.

**(Against defendant SCU)**

11) (1)As the recipient of HSBC auto loan business, SCU portrayed itself as a third party intended beneficiary assignee of Plaintiff's "Contract" and sent letters via USPS to Plaintiff indicating to remit payments to them under the bogus contract number. SCU also portrayed itself as a "creditor" for the Plaintiff and indicated such in Plaintiff's Chap 13for the purpose of receiving payments from the Trustee;

12) (2) there was never a legal assignment established by original parties at the onset of the "Contract" nor was there a novation agreement established by original parties; thus SCU could not be a third party under the "Contract";

13) (3) SCU did not receive a valid legal assignment from HSBC which could, under Tex. Bus. & Com. Code Ann. §1.201: 1) establish HSBC as a true third party intended beneficiary of Plaintiff's "Contract"; or 2) establish a novation agreement. SCU established itself as being a third party intended beneficiary on Plaintiff's "Contract";

14) (4) SCU sent letters via USPS to Plaintiff stating that payments should be made to them and gave the Plaintiff's "Contract" a bogus contract number in such that any payments made were attached to the bogus contract number. This contract number has been transferred to additional third parties of whom used such number to claim assignment;

15) (5) when Plaintiff would contact Beck she was referred to contact HSBC with account inquiries which, in turn, referred Plaintiff to SCU. Payments made by Plaintiff to SCU were allocated to the bogus contract number;

16) (6) as a result of Plaintiff remitting payments to SCU, SCU's unauthorized assignment inferred a right to enforce the "Contract" and sell Plaintiff's loan debt to PRA and Portfolio. PRA and Portfolio, in an attempt to collect on the alleged debt, performed an act of conversion and trespass to chattel with Plaintiff's car which has not been returned to Plaintiff as of the date of this Complaint. The series of occurrences has caused Plaintiff to thereby suffer mental anguish, psychological torture, inconvenience and economic loss.

<u>**PRAYER FOR RELIEF**</u>

17)  WHEREFORE, Plaintiff demands the defendants to be summoned to answer herein and that upon a final hearing of the claims, judgment be entered for the Plaintiff against defendants HSBC, SCU, PRA, Portfolio and TRB individually for the following damages : 1)pre-judgment

interest from the onset date of the injury June 4, 2008 through the date of judgment at the maximum rate allowed under Texas and Federal law; 2)post judgment interest at the legal rate; 3)exemplary damages- punitive; 4)non-economic damages for Plaintiff's mental anguish, psychological torture and inconvenience; 5)consequential damages; 6)general damages; and 7)such other and further relief to which the Plaintiff may be entitled under law as determined by the jury.

## COUNT III
### CONVERSION

**(Against defendants PRA, Portfolio and TRB)**

1) The Plaintiff incorporate by reference paragraphs 1-19 Statement of Facts of this complaint and exhibits as such sets forth here and further states the following:

2) "The elements of a conversion claim are: (1) the Plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of or inconsistent with the Plaintiff's rights as an owner; (3) the Plaintiff demanded return of the property; and (4) the defendant refused to return the property." *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 758-59 (Tex. App.-Dallas 2008, no pet.)

3) (1)Plaintiff is the owner of her car and has an entitlement to possession; (2) PRA, Portfolio and TRB unlawfully and without authorization from the original parties of Plaintiff's "Contract" assumed and exercised control over the Plaintiff's car to the exclusion of or inconsistence with Plaintiff's rights as an owner; (3) the Plaintiff mailed PRA and Portfolio a demand letter for the return of her car and requested to a copy of the Certificate of Title issued in Texas; and (4) PRA, Portfolio and TRB refused to return the Plaintiff's car.  PRA and Portfolio indicated in their response letter "Please note as a matter of security, we do not send copies of collateral title to our customers."

4) According to Texas Law, a Vehicle Transfer Notice is required within 30 days of the process and a copy of a non-negotiable duplicate Certificate of Title should be mailed to the owner along with the original receipt from the Tax Assessor Collector's Office. The title of the vehicle should reflect the owner's name (Plaintiff) regardless if money is owed at the time the Plaintiff purchased the vehicle.

5) Plaintiff has never received a non-negotiable duplicate Certificate of Title nor has she received the original receipt from the Tax Assessor Collector's Office from: Beck, HSBC, SCU, PRA nor Portfolio as required under the Texas Certificate of Title Act.

6) PRA, Portfolio nor TRB has returned Plaintiff's car as of the date of this complaint.

7) "Trespass to personalty is an injury to, or interference with, possession of the property, unlawfully, with or without the exercise of physical force." *Russell v. Am. Real Estate Corp.*, 89 S.W.3d 204, 210 (Tex. App.-Corpus Christi 2002, no pet.) (*citing Jamison v. Nat'l Loan Investors, L.P.,* 4 S.W.3d 465, 469 n.2 (Tex. App.-Houston[1st Dist.] 1999, pet. denied.)). "Destruction of, or injury to, personal property, regardless of negligence, may be a trespass." *Id.*

## PRAYER FOR RELIEF

8)   WHEREFORE, Plaintiff demands the defendants to be summoned to answer herein and that upon a final hearing of the claims, judgment be entered for the Plaintiff against defendants PRA, Portfolio and TRB individually for the following damages : 1)pre-judgment interest from the onset date of the injury June 4, 2008 through the date of judgment at the maximum rate allowed under Texas and Federal law; 2)post judgment interest at the legal rate; 3)exemplary damages- punitive; 4)non-economic damages for Plaintiff's mental anguish, psychological torture and inconvenience; 5)consequential damages; 6)general damages and 7)such other and further relief to which the Plaintiff may be entitled under law as determined by the jury.

## COUNT IV
### TRESPASS TO CHATTEL

**(Against defendants PRA, Portfolio and TRB)**

1) The Plaintiff incorporate by reference paragraphs 1-19 Statement of Facts of this complaint and exhibits as such sets forth here and further states the following:

2) Trespass to chattel is a type of tort that can only result from an intentional act of the defendant.

3) "Trespass to chattels occurs when a person intentionally uses or intermeddles with a chattel in possession of another. A person will be liable to the possessor of the chattel only if: '(a) he dispossesses the other of the chattel or (c) the possessor is deprived of the use of the chattel for a substantial time." Oracle USA, Inc. v. Rimini St., Inc., 2010 U.S. Dist. LEXIS 84254, (D.Nev. Aug. 13, 2010)(quoting Restatement (Second)of Torts §218.)

4) (a) On September 3, 2014, at the Plaintiff's residence in Carrollton, Texas, PRA and Portfolio authorized a fraudulent "repossession" of Plaintiff's car by contracting TRB to take the car; and (c) the defendants have deprived the Plaintiff of the use of her car since September 3, 2014.

## PRAYER FOR RELIEF

5) WHEREFORE, Plaintiff demands the defendants to be summoned to answer herein and that upon a final hearing of the claims, judgment be entered for the Plaintiff against defendants PRA, Portfolio and TRB individually for the following damages : 1)pre-judgment interest from the onset date of the injury June 4, 2008 through the date of judgment at the maximum rate allowed under Texas and Federal law; 2)post judgment interest at the legal rate; 3)exemplary damages- punitive;4) non-economic damages for Plaintiff's mental anguish, psychological torture and inconvenience;5) consequential damages; 6)general damages; and 7)such other and further relief to which the Plaintiff may be entitled under law as determined by the jury.

## COUNT V
### INVASION OF PRIVACY

**(Against defendant TRB)**

1) The Plaintiff incorporate by reference paragraphs 1-19 Statement of Facts of this complaint and exhibits as such sets forth here and further states the following:

2) "Texas law recognizes a common-law right to privacy." *Billings v. Atkins*, 489 S.W.2d 858, 859 (Tex. 1973); *see also Farrington v. Sysco Food Svcs.*, Inc., 865 S.W.2d 247, 253 (Tex. App.-Houston[1st Dist.] 1993), writ denied.

3) "One who intentionally intrudes, physical or otherwise, upon the solitude or seclusion of another or his private affair or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts§ 652B

4) "To prove invasion of privacy, Plaintiff must establish: (1) that defendant intentionally intruded, physically or otherwise, upon Plaintiff solitude, seclusion, or private affairs or concerns; (2) that such intrusion would be highly offensive to a reasonable person; and (3) that Plaintiff suffered injury as a result of the defendant's intrusion." *See Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). "The Plaintiff must establish that she suffered injury as a result of the defendant's intrusion." *Clayton v. Wisener*, 190 S.W.3d 685, 696 (Tex. App.-Tyler 2005, no pet.)

5) (1)TRB intentionally intruded upon Plaintiff's right of privacy in her papers and personal effects which were in her car at the time of conversion and trespass to chattel which also violated Plaintiff's right under the Fourth Amendment "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...";

6) (2) Plaintiff had private documentation in her car at the time of conversion and trespass to chattel which TRB took possession of and read as indicated in TRB's letter to Plaintiff. The letter clearly distinguishes "paperwork" from "trash" and the only way to establish a difference is by reading Plaintiff's documents; and (3) Plaintiff has suffered mental anguish, psychological torture and inconvenience as a result of TRB's intrusion on her private affairs and concerns.

## PRAYER FOR RELIEF

7)   WHEREFORE, Plaintiff demands the defendant to be summoned to answer herein and that upon a final hearing of the claims, judgment be entered for the Plaintiff against defendant TRB individually for damages in an amount within the jurisdictional limits of this Honorable Court, together with 1)pre-judgment interest from the onset date of the injury September 3, 2014 through the date of judgment at the maximum rate allowed under Texas law; 2)post judgment interest at the legal rate;3) exemplary damages- punitive;4) non-economic damages for Plaintiff's mental anguish, psychological torture and inconvenience; 5)consequential damages; 6)actual damages; and 7)such other and further relief to which the Plaintiff may be entitled under law as determined by the jury.

## COUNT VI
### BREACH OF DECEPTIVE TRADE PRACTICES ACT

**(Against defendants Beck, HSBC, SCU)**

1) The Plaintiff incorporate by reference paragraphs 1-19 Statement of Facts of this complaint and exhibits as such sets forth here and further states the following:

2) "The elements of a cause of action for Breach of the Deceptive Trade Practices Act ("DTPA") [Chapter 17, Texas Business & Commerce Code]are: (1) Plaintiff was a consumer as defined in the DTPA; (2) the defendant engaged in at least one of the false, misleading or deceptive acts or practices listed in the DTPA; (3) Plaintiff detrimentally relied on the false, misleading, or deceptive act or practice; and (4) the defendant's false, misleading, or deceptive act or practice was a producing cause of the Plaintiff's injury." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 349 (Tex. 1996).

3) (1)Plaintiff is a consumer as defined under §17.45 (4) DTPA; (2) defendants engaged in deceptive trade practices under §17.46 by causing confusion or misunderstanding as to affiliation with the Plaintiff's "Contract"; (3) Plaintiff relied on defendants false, misleading and deceptive act of claiming a third party intended beneficiary right and remitted payment to HSBC and SCU; and (4) defendants false, misleading and deceptive actions caused Plaintiff's mental anguish, psychological torture, inconvenience and economic loss.

## PRAYER FOR RELIEF

4) WHEREFORE, Plaintiff demands the defendants to be summoned to answer herein and that upon a final hearing of the claims, judgment be entered for the Plaintiff against defendants Beck, HSBC and SCU individually for damages in an amount within the jurisdictional limits of this Honorable Court, together with 1)pre-judgment interest from the onset date of the injury June 4,2008 through the date of judgment at the maximum rate allowed under Texas law; 2)post judgment interest at the legal rate; 3)exemplary damages- punitive; 4)non-economic damages for Plaintiff's mental anguish, psychological torture and inconvenience; 5)consequential damages, 6)actual damages; and 7)such other and further relief to which the Plaintiff may be entitled under law as determined by the jury.

## COUNT VII

## FRAUDULENT INDUCEMENT

**(Against Beck, HSBC and SCU)**

1) The Plaintiff incorporate by reference paragraphs 1-19 Statement of Facts of this complaint and exhibits as such sets forth here and further states the following:

2) "Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798(Tex. 2001).

3) Restatement (Second) Torts §162. (1)A misrepresentation is fraudulent, if the maker intends his assertion to induce a party to manifest his assent and the maker (a) knows or believes that the assertion is not in accord with the facts; (2) A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so.

4) (1)Beck knew that by indicating HSBC as an assignee on the "Contract" and along with the language on the "Contract" stating that they (Beck) could sell or transfer their rights would be enough to induce the Plaintiff that a "right" existed in such that Plaintiff would have to pay HSBC (a)Beck knew that there was no establishment of a legal assignment as stated under the Third Party Beneficiary Doctrine; (2) Beck knew that the Plaintiff would rely on the statements of the "Contract" and not question the legalities of the assignment. Beck knew that Plaintiff would not question this because this was the first car Plaintiff had financed.

5) Upon the detrimental reliance of Beck's fraudulent inducement, the Plaintiff made payments to HSBC for her car which is what Beck intended or had reason to expect Plaintiff to do. As a result, Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience.

6) (1) HSBC accepted payments from Plaintiff as a fraudulent "third party intended beneficiary" and issued a bogus contract number for payments to be applied to; (a) HSBC knew that there was never an assignment contract established between parties nor was there a novation agreement between parties and that there was never an establishment of what type of assignee it was under the Third Party Beneficiary Doctrine; (2) By administering a bogus contract number for the Plaintiff to track payments, Plaintiff could not discern if the process as a whole was real or fraud.

7) Upon the detrimental reliance of HSBC's fraudulent assignment, the Plaintiff was influenced to make payments to HSBC for her car loan which is what HSBC intended or had reason to expect Plaintiff to do. As a result, Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience.

8) (1)SCU accepted payments from Plaintiff as a "third party intended beneficiary" on a bogus contract number for payments to be applied to: (a) SCU knew that there was never an assignment contract established between parties which indicated what type of third party beneficiary HSBC was under the original "Contract" nor was there a novation agreement between parties. (2) By administering a bogus contract number with Plaintiff's "Contract" to track payments, Plaintiff could not discern if the process as a whole was real or fraud. As a result, Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience.

## PRAYER FOR RELIEF

9) WHEREFORE, Plaintiff demands the defendant to be summoned to answer herein and that upon a final hearing of the claims, judgment be entered for the Plaintiff against defendant Beck, HSBC and SCU individually for damages in an amount within the jurisdictional limits of this Honorable Court, together with 1)pre-judgment interest from the onset date of the injury June 4,2008 through the date of judgment at the maximum rate allowed under Texas law; 2)post judgment interest at the legal rate; 3)exemplary damages- punitive; 4)non-economic damages for Plaintiff's mental anguish, psychological torture and inconvenience; 5)consequential damages; 6)actual damages; and 7)such other and further relief to which the Plaintiff may be entitled under law as determined by the jury.

## COUNT VIII

### INTERFERENCE WITH EXISTING CONTRACT

**(Against HSBC, SCU, PRA and Portfolio)**

1) The Plaintiff incorporate by reference paragraphs 1-19 Statement of Facts of this complaint and exhibits as such sets forth here and further states the following:

2) "The elements of interference with existing contract are: (1) there exists a contract that is subject to interference; (2) there is a willful and intentional act of interference by the defendant; and (3) the defendant's intentional act of interference was a proximate cause of actual damages to the plaintiff; and (4) actual damages and loss." *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991); *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995); *see also Nova Consulting Grp. V. Eng'g Consulting Servs. Ltd.*, 290 F. App. 727, 737 (5th Cir. 2008); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).

3) "Liability for tortious interference is based on the acts of an interfering third party. Therefore, a party cannot tortiously interfere with its own contract." *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Companies, Inc.*, 217 S.W.3d 653, 668 (Tex. App.-Houston [14th Dist.] 2006, pet.denied).

4) (1)Plaintiff is an original party to the "Contract" with Beck indicated as creditor; (2) HSBC asserted itself as a third party intended beneficiary of the "Contract" without establishing an assignment as such nor a novation agreement between parties; (3) due to HSBC's willful and intentional act, it sold Plaintiff's debt to SCU who sold the debt to PRA and Portfolio who then stole Plaintiff's car in an act of conversion and trespass to chattel which caused damages of mental anguish, psychological torture, inconvenience and economic loss to the Plaintiff.

5) (1)Plaintiff is an original party to the "Contract" with Beck indicated as creditor; (2) SCU asserted itself as a third party intended beneficiary of the "Contract" without establishing an assignment as such nor a novation agreement between parties; (3) due to SCU's willful and intentional act, it sold Plaintiff's debt to PRA and Portfolio who then stole Plaintiff's car in an act of conversion and trespass to chattel which caused damages of mental anguish, psychological torture, inconvenience and economic loss to the Plaintiff.

6) (1)Plaintiff is an original party to the "Contract" with Beck indicated as creditor; (2) PRA and Portfolio asserted itself as a third party intended beneficiary of the "Contract" without establishing an assignment as such nor a novation agreement between parties; (3) due to PRA and Portfolio's willful and intentional act, it stole Plaintiff's car in an act of conversion and trespass to chattel which caused damages of mental anguish, psychological torture; inconvenience and economic loss to the Plaintiff.

## PRAYER FOR RELIEF

7) WHEREFORE, Plaintiff demands the defendant to be summoned to answer herein and that upon a final hearing of the claims, judgment be entered for the Plaintiff against defendant  HSBC, SCU, PRA and Portfolio individually for damages in an amount within the jurisdictional limits of this

Honorable Court, together with 1)pre-judgment interest from the onset date of the injury June 4,2008 through the date of judgment at the maximum rate allowed under Texas law; 2)post judgment interest at the legal rate; 3)exemplary damages- punitive; 4)non-economic damages for Plaintiff's mental anguish, psychological torture and inconvenience; 5)consequential damages; 6)actual damages; and 7)such other and further relief to which the Plaintiff may be entitled under law as determined by the jury.

**COUNT IX**
NEGLIGENT MISREPRESENTATION

**(Against HSBC, SCU)**

1) The Plaintiff incorporate by reference paragraphs 1-19 Statement of Facts of this complaint and exhibits as such sets forth here and further states the following:

2) "The elements of negligent misrepresentation are: (1) the defendant provided information in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the information supplied was false; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the information; and (5) the plaintiff suffers damages proximately caused by his reliance on the false information." *Larsen v. Carlene Langford & Associates Inc.*, 41 S.W.3d 245 (Tex. App.-Waco 2001 n.pet.h.)

3) (1)HSBC negligently misrepresented itself as a third party intended beneficiary to collect payments under Plaintiff's "Contract"; (2) HSBC was not indicated as a third party intended beneficiary on Plaintiff's "Contract"; (3) HSBC did not communicate the truth that it had no legal entitlement established in order to benefit from Plaintiff's contractual agreement with Beck; (4) Plaintiff relied on HSBC's negligent misrepresentation and remitted payments to it; (5) as a result of such misrepresentation, Plaintiff's loan was sold several times and her car became an item of conversion from PRA and Portfolio. Plaintiff suffered mental anguish, psychological torture, economic damage and inconvenience.

4) (1)SCU negligently misrepresented itself as a third party intended beneficiary to collect payment under Plaintiff's "Contract"; (2) SCU was not indicated on "Contract" as a third party intended beneficiary; (3) SCU did not communicate the truth that it had no legal entitlement established in order to benefit from Plaintiff's contractual agreement with Beck; (4) Plaintiff relied on SCU's negligent misrepresentation and remitted payments to it; (5) as a result of such misrepresentation, Plaintiff's loan was sold several times and her car became an item of conversion from PRA and Portfolio. Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience.

## PRAYER FOR RELIEF

5)   WHEREFORE, Plaintiff demands the defendant to be summoned to answer herein and that upon a final hearing of the claims, judgment be entered for the Plaintiff against defendant HSBC and SCU individually for damages in an amount within the jurisdictional limits of this Honorable Court, together with 1)pre-judgment interest from the onset date of the injury June 4,2008 through the date of judgment at the maximum rate allowed under Texas law; 2)post judgment interest at the legal rate; 3)exemplary damages- punitive; 4)non-economic damages for Plaintiff's mental anguish, psychological torture and inconvenience; 5)consequential damages; 6)actual damages; and 7)such other and further relief to which the Plaintiff may be entitled under law as determined by the jury.

## COUNT X
FRAUD BY NONDISCLOSURE

**(Against Beck, HSBC and SCU)**

1)   The Plaintiff incorporate by reference paragraphs 1-19 Statement of Facts of this complaint and exhibits as such sets forth here and further states the following:

2)   "The elements of fraud by nondisclosure are: (1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge." *Reservoir Syst., Inc. v. TGS-NOPEC Geophysical Co., L.P.* 335 S.W.3d 297, 306 (Tex. App.-Houston[14th Dist.] 2010, pet. denied).

3)   (1)Beck failed to disclose the facts of: 1) in order to legally establish an agreement with HSBC as a third party intended beneficiary there would need to be an assignment agreement indicating such and 2) that HSBC could not legally enforce Plaintiff's "Contract" in which it had no legal entitlement; (2) Beck had a legal duty to disclose the contractual legalities of the "Contract", assignment agreement or novation agreement and to tell the Plaintiff that she would not be bound to any assignment until such legalities had been satisfied;

4)   (3) the information which was not disclosed by Beck was material; (4) Beck knew that this was Plaintiff's first time purchasing a car through financing and did not understand the contractual legalities beyond what was actually being told to her. Plaintiff was in need of a car and that Plaintiff was ignorant to the facts and did not have an equal opportunity to discover the facts;

5) (5) Beck was deliberately silent about information not "asked" when it had a duty to inform Plaintiff of the legalities involving a legal assignment or novation with HSBC; (6) by failing to disclose such facts, Beck intended to induce the Plaintiff to make payments to HSBC;

6) (7) Plaintiff relied on Beck's nondisclosure and (8) the Plaintiff remitted payments to HSBC which assumed the authority of both a third party intended beneficiary and novation in such that eventually, HSBC assigned Plaintiff's debt to SCU who later sold Plaintiff's debt to PRA and Portfolio who in turn involved Plaintiff's car in an act of conversion and trespass to chattel. As a result, Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience.

7) (1)HSBC failed to disclose the facts of: 1) in order to legally establish an agreement as a third party intended beneficiary there would need to be an assignment agreement indicating such with the original parties and 2) it could not legally enforce a contract in which it had no legal entitlement; (2) HSBC had a legal duty to disclose the fact that it had not legally received an assignment as a third party intended beneficiary nor novation agreement;

8) (3) the information which was not disclosed by HSBC was material; (4) HSBC knew that Plaintiff was ignorant of the facts and did not have an equal opportunity to discover the facts; (5) HSBC was deliberately silent about the facts when it had a legal duty to inform Plaintiff that there was not legal assignment indicating HSBC as a third party intended beneficiary nor was there a novation agreement between parties; (6) by failing to disclose such facts, HSBC intended to induce the Plaintiff to remit payments for their benefit and not question the legalities of establishing proper written instruments;

9) (7) Plaintiff relied on HSBC's nondisclosure; and (8) the Plaintiff remitted payments to HSBC which assumed the authority of both a third party intended beneficiary and novation in such that eventually, HSBC sold Plaintiff's debt to SCU who later sold Plaintiff's debt to PRA and Portfolio who in turn involved Plaintiff's car in an act of conversion and trespass to chattel. As a result, Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience.

10) (1)SCU failed to disclose the facts of: 1) in order to legally establish an agreement as a third party intended beneficiary there would need to be a legal agreement indicating such with the original parties and 2) it could not legally enforce a contract in which it had no legal entitlement; (2) SCU had a legal duty to disclose the fact that it had not legally received an assignment from the original contractual parties as a third party intended beneficiary nor novation agreement;

11) (3) the information which was not disclosed by SCU was material; (4) SC knew that Plaintiff was ignorant of the facts and did not have an equal opportunity to discover the facts; (5) SCU was deliberately silent about the facts when it had a legal duty to inform Plaintiff that there was not legal assignment indicating SCU as a third party intended beneficiary nor was there a novation

agreement between parties; (6) by failing to disclose such facts, SCU intended to induce the Plaintiff to remit payments for their benefit and not question the legalities of establishing proper written instruments;

12) (7) Plaintiff relied on SCU's nondisclosure; and (8) the Plaintiff remitted payments to SCU which assumed the authority of both a third party intended beneficiary and novation in such that eventually, sold Plaintiff's debt to PRA and Portfolio who in turn involved Plaintiff's car in an act of conversion and trespass to chattel. As a result, Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience. As a result, Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience.

## PRAYER FOR RELIEF

13) WHEREFORE, Plaintiff demands the defendants to be summoned to answer herein and that upon a final hearing of the claims, judgment be entered for the Plaintiff against defendant Beck, HSBC and SCU individually for damages in an amount within the jurisdictional limits of this Honorable Court, together with a 1)pre-judgment interest from the onset date of the injury June 4,2008 through the date of judgment at the maximum rate allowed under Texas law; 2)post judgment interest at the legal rate; 3)exemplary damages- punitive; 4)non-economic damages for Plaintiff's mental anguish, psychological torture and inconvenience; 5)consequential damages; 6)actual damages; and 7)such other and further relief to which the Plaintiff may be entitled under law as determined by the jury.

## COUNT XI
### ABUSE OF PROCESS

**(Against Beck, HSBC, SCU, PRA, Portfolio and TRB)**

1) The Plaintiff incorporate by reference paragraphs 1-19 Statement of Facts of this complaint and exhibits as such sets forth here and further states the following:

2) "The tort of abuse of process elements are: (1) there was an illegal, improper, or perverted use of the legal process, neither warranted nor authorized by the legal process; (2) there was an ulterior motive or purpose in exercising such use; and (3) there was damage as a result of the illegal act." *Graham v. Mary Kay, Inc.*, 25 S.W.3d 749, 756 (Tex. App. –Houston[14th Dist.] 2000, pet. denied.)

3) "Abuse of process is the malicious misuse or misapplication of legal process in order to accomplish an ulterior purpose." *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 378 (Tex. App.-Houston[14th Dist.] 2000, pet. denied).

4) "Abuse of process exists where the original process is used to accomplish an end other than that which the writ was designed to accomplish." *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.-Houston[14th Dist.] 1994, writ denied).

5) (1)Beck listed HSBC as "assignee" on the "Contract" and did not include the type of assignee is should be under the Third Party Beneficiary Doctrine yet gave rights to HSBC as a third party intended beneficiary; (2)Beck's ulterior motive was to induce Plaintiff to remit payments to HSBC;

6) (3) as a result of such illegal act, HSBC misrepresented itself and accepted payments from the Plaintiff. HSBC later sold Plaintiff's loan to SCU who then misrepresented itself and accepted payments from the Plaintiff. SCU later sold Plaintiff's loan to PRA and Portfolio who involved Plaintiff's car in an act of conversion and trespass to chattel. As a result, Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience.

7) (1)HSBC was listed as "assignee" on the "Contract". Beck did not specify the type of assignment for HSBC; (2) HSBC misrepresented itself as a third party intended beneficiary;

8) (3) HSBC later sold Plaintiff's loan and gave an assignment to SCU who then misrepresented itself and accepted payments from the Plaintiff. SCU later sold Plaintiff's loan to PRA and Portfolio who involved Plaintiff's car in an act of conversion and trespass to chattel. As a result, Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience.

9) (1)SCU acted upon an illegal assignment it received from HSBC; (2) SCU misrepresented itself as a third party intended beneficiary of Plaintiff's "Contract"; (3) SCU accepted payments from the Plaintiff and later sold Plaintiff's loan to PRA and Portfolio who involved Plaintiff's car in an act of conversion and trespass to chattel. As a result, Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience.

10) (1)PRA and Portfolio acted upon an illegal assignment it received from SCU through the United States Bankruptcy Court Southern District of Texas; (2) PRA and Portfolio, upon receipt of a Transfer of Claim Other Than for Security Interest and misrepresented itself as a third party intended beneficiary for the purpose of collecting payments from Plaintiff;

11) (3) due to Plaintiff not remitting payment under an alleged debt owed, PRA and Portfolio involved Plaintiff's car in an act of conversion and trespass to chattel. As a result, Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience.

12) (1)TRB performed an illegal repossession under the direction of PRA and Portfolio without verifying the legal ownership of Plaintiff's car; (2) through its participation of conversion and

trespass to chattel with PRA and Portfolio, TRB stole Plaintiff's car and did not inform Plaintiff where the car was being held;

13) (3) TRB illegally trespassed onto Plaintiff's property and involved Plaintiff's car in an act of conversion and trespass to chattel. As a result, Plaintiff suffered mental anguish, psychological torture, economic loss and inconvenience.

## PRAYER FOR RELIEF

14)  WHEREFORE, Plaintiff demands the defendants to be summoned to answer herein and that upon a final hearing of the claims, judgment be entered for the Plaintiff against defendant Beck, HSBC, SCU, PRA, Portfolio and TRB individually for damages in an amount within the jurisdictional limits of this Honorable Court, together with 1)pre-judgment interest from the onset date of the injury June 4,2008 through the date of judgment at the maximum rate allowed under Texas law; 2)post judgment interest at the legal rate; 3)exemplary damages-punitive; 4)non-economic damages for Plaintiff's mental anguish, psychological torture and inconvenience; 5)consequential damages; 6)actual damages; and 7)such other and further relief to which the Plaintiff may be entitled under law as determined by the jury.

Date: _____October 27, 2014_____

"JURY TRIAL DEMANDED"

Jennifer Abbott-Pope

Pro Se

2206 Statler Drive

Carrollton, Texas 75007

832-883-3650

Tejas201390@gmail.com

3-14CV-3838M

JS 44-TXND (Rev. 12/12)

**CIVIL COVER SHEET**

RECEIVED
OCT 2 2014
CLERK U.S.
DISTRICT COURT

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Jennifer K. Abbott-Pope

**DEFENDANTS**
Beck & Masten Pontiac- GMC. Inc.; HSBC Financial Corporation; PRA Receivables Management, LLC as agent of Portfolio Recovery Associates, LLC; Portfolio Recovery Associates, LLC; Santander

**(b)** County of Residence of First Listed Plaintiff    Denton
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Tarrant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jennifer Abbott-Pope, Pro se
2206 Statler Drive Carrollton, Texas 75007
832-883-3650

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
U.S. Civil Statute 18 U.S.C. §1341
Brief description of cause:
Mail Fraud

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED PENDING OR CLOSED CASE(S) IF ANY**
*(See instructions):*
JUDGE      DOCKET NUMBER

DATE
10/27/2014

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE